# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ANTHONY WOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:15-cv-01724-SGC |
| ) | |
| SOCIAL SECURITY ADMINISTRATION, ) | |
| Commissioner, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

The plaintiff, Anthony Wood, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying him a period of disability, disability insurance benefits ("DIB"), and social security income ("SSI") benefits. (Doc. 1). Mr. Wood timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons that follow, the decision of the Commissioner will be reversed, and this matter will be remanded for further proceedings.

## I. FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Mr. Wood was born on January 18, 1952, and completed his high school education. (R. 20). His past relevant work experience includes work as a cook. (*Id.*). Mr. Wood claims he became disabled on February 17, 2012, primarily due to arthritis in his left knee. (R. 41, 122). Mr. Wood also has human immunodeficiency virus ("HIV") and has borderline mental functioning. (R. 12-13).

Mr. Wood filed for DIB and SSI benefits on October 4, 2012. (R. 10). His claims were initially denied on July 23, 2013. (*Id.*). The Administrative Law Judge ("ALJ") denied Mr.

Wood's applications on September 24, 2014. (R. 7-22). The Appeals Council denied review of the ALJ's decision, and Mr. Wood timely appealed to this court. (Doc. 1; *see also* R. 1-3).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the evaluation stops. *Id*. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled, and the

evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process here, the ALJ found Mr. Wood had not engaged in SGA since his alleged onset of disability. (R. 12). At step two, the ALJ found Mr. Wood suffered from the severe impairments of "borderline intellectual functioning; rule out mild mental retardation (intellectual disability)," and degenerative arthritis of the left knee. (*Id.*). The ALJ classified Mr. Wood's HIV, hypertension, and other conditions as non-severe. (R. 13).

At step three, the ALJ found Mr. Wood did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments. (R. 13). Before proceeding to step four, the ALJ determined Mr. Wood had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that he is able to occasionally climb ladders, ropes, or scaffolds; is able to understand, remember, and carry out simple, routine, and repetitive tasks; is able to maintain attention and concentration for these tasks for two hours at a time with normal breaks; and is able to adapt to changes for simple, routine, and repetitive tasks. (R. 16). In determining the RFC, the ALJ considered Mr. Wood's symptoms and activities, the medical record, and opinion evidence. (R. 16-20).

In reaching her conclusion regarding the plaintiff's work-related limitations, the ALJ assigned little weight to the opinion of Dr. Rahim Kassamali, a consultative examiner. Although Dr. Kassamali opined Mr. Wood was not substantially limited in various work-related activities, this opinion was not given in vocationally relevant terms to indicate the most Mr. Wood could

3

do. (R. 19). In his consultative examination, Dr. Kassamali noted Mr. Wood complained of pain in his left knee and an x-ray showed degeneration. (R. 54).

The State agency single decisionmaker's opinion as to Mr. Wood's physical capacity for work was not considered on the grounds that Memorandum 10-1691 "clarifies that single decisionmaker opinions are not opinion evidence that an ALJ must consider or weigh in a decision." (R. 19). The ALJ assigned great weight to the opinion of Dr. Angela Register, Ph.D., a State agency consultant who opined that Mr. Wood is able to understand, remember, and carry out simple, routine, and repetitive tasks; maintain attention and concentration; and adapt to changes for simple, routine, and repetitive tasks. (R. 19-20). The ALJ assigned "some not great weight" to the opinion of consultative examiner Dr. Sharon Waltz, who opined that Mr. Wood had mild mental impairments. Dr. Waltz stated Mr. Wood has a fair ability to understand, remember, and carry out instructions and respond appropriately to a work setting, but her opinion was not stated in vocationally relevant terms. (R. 20).[1]

As to Mr. Wood's own testimony regarding his allegedly disabling pain, the ALJ concluded that while the medically determinable impairments could reasonably be expected to cause Mr. Wood's symptoms, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (R. 17). Mr. Wood testified he experiences left knee pain daily. (R.39-40). He testified he can walk about two blocks before he needs to stop and rest and can stand for about thirty minutes at a time. (R. 40). The ALJ found that "although imaging results confirm severe knee impairment, they do not support the claimant's allegations as to the debilitating nature of that impairment." (R. 17). The ALJ pointed to x-ray results from 2013, which confirm patellofemoral degenerative changes with small joint effusion.

---

[1] Mr. Wood does not appeal from the ALJ's decision as to his mental impairments.

(*Id.*).  The ALJ also found the treatment notes provided from Mr. Wood's primary care physician and other examiners do not support his testimony as to the debilitating nature of his knee impairment.  (*Id.*).

At step four, the ALJ determined Mr. Wood is incapable of performing any past relevant work.  (R. 20).  In reaching this conclusion, the ALJ relied on the testimony of the vocational expert.  (*Id.*).  However, at step five, the ALJ determined Mr. Wood is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  (R. 21).  Accordingly, the ALJ made a finding of "not disabled."  (*Id.*).  As discussed below, the undersigned finds the ALJ's conclusion as to Mr. Wood's pain testimony and by extension, the ALJ's findings as to Mr. Wood's RFC, are not supported by substantial evidence and are inconsistent with applicable law.

## II.     STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence

standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III.  DISCUSSION

Mr. Wood contends the ALJ's decision is not supported by substantial evidence and is inconsistent with applicable law. (Doc. 16 at 1). Specifically, Mr. Wood argues the ALJ failed to properly apply the Eleventh Circuit's pain standard to Mr. Wood's credible testimony. (*Id.* at 3). Where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria. In the Eleventh Circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). As the court stated in *Holt*:

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain

>arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[2]

*Id.* However, medical evidence of pain itself or of its intensity is not required:

>While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (internal citations omitted). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if she articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). But before doing so, the adjudicator must "examine the entire case record, including the objective medical evidence; an individual's statements . . . and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling 16-3p, 2016 WL 1119029, *8 (March 16, 2016). Ruling 16-3p also provides that an adjudicator may not "find an individual's symptoms inconsistent with the evidence in the record . . . without first considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her

---

[2] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

complaints." SSR 16-3p, 2016 WL 1119029 at *9. The ALJ should consider various factors in determining why the claimant might not have sought treatment consistent with his complaints, including whether the individual may be unable to afford free or low-cost medical services; whether he may be able to find some relief from over-the-counter medications; and whether his symptoms may have plateaued. *Id.*

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). Here, the ALJ's reasons for refusing to credit the plaintiff's pain testimony are not supported by substantial evidence, and the ALJ's reasoning reflects a failure to adhere to the guidance of Ruling 16-3p.

The ALJ's findings state the following:

> The claimant's lack of treatment undermines his allegations as to the debilitating nature of his impairments. Despite the claimant's allegations of debilitating knee pain, he failed to follow up for charity care numerous times in order to treat his knee. At the hearing, the claimant testified that he took no medication for the pain, not even over-the-counter medication. Thus, the claimant has not had the level of care one would expect for a disabled individual.

(R. 19).

The ALJ detailed the number of primary care visits Mr. Wood made over the course of approximately one year. (R. 17-18). The ALJ also found Mr. Wood failed to follow up with an orthopedic specialist even though one was recommended to him. (R. 18). The undersigned notes Mr. Wood testified he did not have health insurance. (R. 33). In considering Mr. Wood's treatment history, the ALJ noted Mr. Wood was encouraged to seek charity care so that he could

see a specialist notwithstanding his poverty and lack of insurance. (R. 17-18). Mr. Wood was encouraged to seek charity care for over a year before he eventually did get approved for it. (R. 18).

The evidence shows Mr. Wood consistently sought out treatment for pain in his left knee. (R. 253, 254, 258, 279, 295, 300, 302, 316, 322). Although the ALJ noted Mr. Wood was encouraged to seek approval for charity care and failed to do so for over a year, it is undisputed that he did seek and obtain it. (R. 33). There is no indication the ALJ sought to gather information from Mr. Wood regarding the reasons for his delay in seeking charity care, nor does the ALJ appear to have considered Mr. Wood's testimony that he had no transportation of his own and relied on public transportation or a nonprofit shuttle service to get around. (R. 34).

The ALJ also concluded Mr. Wood's pain testimony was undermined by his failure to use pain medication. (R. 19). Mr. Wood did not report taking any medications for his knee pain when asked about it at a hearing before the ALJ, and the ALJ relied on this statement in finding Mr. Wood's pain testimony was not fully credible. (R. 18-19, 33, 38-40). But the record also shows Mr. Wood reported to a physician that he took Aspirin as needed. (R. 241). On another occasion, he reported taking over-the-counter Ibuprofen for pain relief. (R. 268). Although the ALJ apparently relied on Mr. Wood's failure to take over-the-counter medications in deeming his pain testimony to be not credible, these discrepancies in the evidence are not addressed in the ALJ's opinion.

The ALJ failed to inquire into the reasons for Mr. Wood's delay in seeking charity care before relying on that delay as a basis for finding his pain testimony not credible. The record contains ample evidence that Mr. Wood did seek treatment. To the extent the ALJ concluded Mr. Wood did not receive treatment at a level commensurate with his reported pain, the ALJ

made little or no inquiry into possible explanations for this. Given the ample evidence that Mr. Wood did seek charity care, made frequent visits to the doctor during which his complaints of knee pain were consistent over a period of years, and did take over-the-counter medications for pain as recommended by his doctors, the ALJ's findings with respect to the credibility of Mr. Wood's pain testimony are not supported by substantial evidence in the record.

For these reasons, the opinion of the ALJ is due to be reversed, and this matter is due to be remanded for further proceedings consistent with this opinion. On remand, the ALJ should not make any conclusion as to the credibility of Mr. Wood's pain testimony without first considering the entire case record, including the evidence of Mr. Wood's physician visits over the years, his complaints of knee pain, the objective medical evidence corroborating his complaints, and the evidence that he has self-medicated with over-the-counter medications in spite of his lack of funds and insurance. Before drawing any conclusion that Mr. Wood's delay in seeking charity care should support a conclusion that his testimony is not credible, the ALJ must make specific findings as to the reasons for Mr. Wood's delay in seeking such care as instructed in Rule 16-3p.

**IV.   CONCLUSION**

For all of the foregoing reasons, the decision of the ALJ is subject to remand for proper consideration of Mr. Wood's case. A separate order will be entered.

**DONE** this 16th day of March, 2017.

*/s/ Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE